CALEB STETSON & another *vs.* PRESIDENT, DIRECTORS AND COMPANY OF THE EXCHANGE BANK.

No appeal can be taken from a judgment for the plaintiff on a demurrer to a declaration in set-off, until the issues raised by the defendant's answer have been tried.

A bank cannot set off notes left with them for discount, which they have refused to discount, in an action subsequently brought by the assignees in insolvency of the depositor, on a debt due from the bank to him before his insolvency.

ACTION OF TORT by the assignees in insolvency of Reed & Tuttle for the conversion of seven promissory notes, amounting to $2,590.70.

The defendants answered, denying the plaintiffs' title, and

36*

alleging that the notes were held by the defendants as collateral security for the indebtedness of Reed & Tuttle to the bank. They also filed a declaration in set-off, in which they averred that Reed & Tuttle, at the time of their insolvency, were liable to the defendants as indorsers upon certain other notes discounted by them; and that before the date of the writ this liability had become fixed, by the dishonor and nonpayment of those notes.

The plaintiffs, in their answer to the declaration in set-off, demurred to the same, because, the action being an action of tort, the defendants could not in any form avail themselves of the set-off.

In the court of common pleas, *Sanger,* J. sustained the demurrer, and the defendants claimed an appeal before trial. But the judge ruled that the case should go to trial, and if there should be a verdict for the plaintiffs, the appeal should then be allowed.

At the trial, it appeared that the notes in suit, together with eight others, were offered by Reed & Tuttle to the defendants for discount; that the bank refused to discount the notes in suit, but discounted the eight others, amounting to $4,103.68, on the 6th of November 1854, and paid all of those at maturity, except one for the sum of $215.22; and that the notes in suit were left at the bank, and were subsequently demanded by the plaintiffs and their return refused.

The defendants introduced evidence to show that the eight notes were discounted upon the express agreement that the others should be left as collateral security; and this issue was submitted to the jury. There was evidence tending to show that the defendants' president told Tuttle, one of the firm of Reed & Tuttle, that the seven notes were held as collateral security, and, upon his replying that he did not so understand it, offered to give up all the notes if Tuttle would return the money paid on those discounted.

The defendants requested the court to instruct the jury, " that if the officers of the bank supposed the notes were lodged as collateral, and offered to cancel the whole arrangement if Tuttle

did not so understand it, and Tuttle was so informed, he was bound to return the $4,000, or he and his assignees were concluded to deny the agreement." The judge refused so to instruct the jury, but did instruct them " that, if Tuttle consented to the arrangement that the notes should remain as collateral, the plaintiffs were concluded by that fact ; " and " that, if they were satisfied that such an agreement, to wit, that the seven notes should be held as collateral to the eight notes discounted, was made by any one on behalf of Tuttle, and by his authority, the present action could not be maintained ; but if they were satisfied that no such agreement was made, and that the transaction was simply this, that fifteen notes were left for discount, and of these eight were discounted, and seven were not, and there was no agreement in regard to such seven notes, and if the seven notes not discounted had been duly demanded before action brought, the defendants were liable for the full amount thereof, and interest."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*J. J. Clarke & P. W. Chandler,* for the defendants.

*E. Wilkinson & E. Avery,* for the plaintiffs.

SHAW, C. J.* 1. It appears to us that the course adopted by the court, as to the order of trial, was right, and in strict conformity with the new practice act, *St.* 1852, *c.* 312. The demurrer applied only to the declaration in set-off, and this constituted but part of the case. The defendants filed an answer, as well as a declaration in set-off, and that raised issues in fact, which remained. If this adjudication was not conclusive, as turning upon matters of form, according to § 23 of the statute cited, still it was in the nature of an interlocutory judgment, which did not dispose of the cause. The defendants might file their exceptions, that the question might be brought before this court, if open to revision, after a final judgment, upon a transfer of the entire cause to this court by appeal or exceptions ; but could not appeal and transfer the cause at that stage.

---

* BIGELOW, J. did not sit in this case.

2. On the main question, whether the bank had a right to retain these notes for their own use, and, on a claim made on them for the value, to set off the debt due to them from the insolvents, the court are of opinion that, without contract or agreement to that effect, they could not. Upon the supposition that the bank had a mere naked custody of these notes, without proprietary or beneficial interest in them, by indorsement, assignment, hypothecation or otherwise, such naked possession of the notes, without even an authority to collect them and turn them into money, did not, with the debt due to them from the insolvents, constitute mutual credits, within the meaning of the *St.* of 1838, *c.* 163, § 3.

In one of the latest cases on this subject, *Demmon* v. *Boylston Bank*, 5 Cush. 194, it was held, that where the bank were creditors of the insolvent as holders of a discounted note, and debtors to the same insolvent as a depositor at the bank, these were mutual credits. But the distinction was there expressly taken between such a pecuniary credit, and the mere deposit of specific articles, without any lien or pledge, by contract, usage of trade or otherwise. The case of *Rose* v. *Hart*, 8 Taunt. 499, is there referred to, where this distinction is fully considered. It was there held that, to constitute such a credit, it must be property consigned, deposited or intrusted to be converted into money, so that the liability to account for it would ultimately become a debt.

This question, depending upon the provisions for proving and setting off mutual debts, under the insolvent laws, is quite distinguishable from that of proving and setting off claims against a deceased insolvent, as in *M'Donald* v. *Webster*, 2 Mass. 498, *Phelps* v. *Rice*, 10 Met. 128, and that class of cases. There all claims which do by law survive must be brought in and liquidated, whether debts or claims for damages ; for the reason that they do survive, and the estate is by law held liable for them.

These notes, at the time of the insolvency, were the property of the insolvents, subject to no charge or incumbrance ; by the assignment, the property in them vested in the assignees ; they became the legal owners of them ; and the refusal of the bank

to deliver them was a conversion, for which an action of tort will lie. •

3. Upon the question of fact, whether there was any agreement or contract by which these notes were pledged as collateral security for other notes discounted by the defendants, the court eft the case to the jury upon the evidence, and they found a verdict for the plaintiffs. *Exceptions overruled.*